Maureen Marei DiRUSSO, Respondent,

v.

John J. DiRUSSO, Appellant.

No. SD 30859.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 5, 2011.

Matthew Blane Baker, Osceola, MO, for appellant.

Maureen Marei DiRusso, El Dorado Springs, MO, pro se.

1. We note Wife did not file a brief in this matter nor was she required to do so.

2. There was evidence in the record that the parties were forty-eight and fifty years old respectively.

3. Although Wife was not represented by legal counsel at the trial in this matter, pro se litigants are held to the same standards as

ROBERT S. BARNEY, Judge.

Appellant John J. DiRusso ("Husband") appeals the "Judgment of Dissolution of Marriage" entered by the trial court which dissolved his marriage to Respondent Maureen Marei DiRusso ("Wife").[1] In his two points relied on Husband takes issue with the trial court's award of $400.00 per month in maintenance to Wife.

Viewing the evidence in the light most favorable to the trial court's decree, *Sweet v. Sweet,* 154 S.W.3d 499, 503 (Mo.App. 2005), the record reveals the parties were married on July 11, 1981, and separated on May 2, 2004.[2] There were two children born of the marriage; however, both were emancipated at the time of trial. Wife filed her "Petition for Dissolution of Marriage" on June 1, 2010, in which she requested maintenance from Husband. In the "Statement of Property and Debt and Proposed Separation Agreement" attached to her petition, Wife listed no items of non-marital or marital property; no real estate or other tangible property; and no marital or non-marital debts. Further, she did not fill out the provision entitled "Part Two—Maintenance and Other Provisions" nor did she sign or complete the section entitled "Statement of Income and Expenses." In lieu of filing a formal answer to Wife's petition, Husband filed a handwritten statement with the trial court that stated he was "in agreement with this paperwork" filed by Wife.

A trial was held in this matter on August 24, 2010. At trial, Wife appeared *pro se*[3] and Husband appeared with represen-

attorneys. *In re Marriage of Garrison,* 158 S.W.3d 336, 337 (Mo.App.2005).

'While this [C]ourt recognizes the problems faced by pro se litigants, we cannot relax our standards [or the standards of the trial court] for non-lawyers. It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy and fairness to all parties.'

tation. In the opening discussions with the trial court counsel for Husband acknowledged that while "[t]he petition filed by [Wife] does not include any prayer for maintenance" he believed that she had made a request for $400.00 a month in maintenance at a previous court appearance.[4] As such, the parties agreed that the only issue for trial was that of maintenance.

Wife testified that at the time of the marriage in 1981 Husband was working at a lumberyard in Massachusetts and that when they moved to Missouri he worked at "kind of like a halfway house called Easy Living." She related Husband is currently unemployed and has been unemployed for "seven, eight years." She also related that during their marriage she worked "[o]nce or twice here and there," but that "[a] lot of the time [she] was forced to quit to take care of the children" and she had been unemployed for over ten years. Wife testified that both she and Husband had their General Education Diplomas. Wife stated that Husband left her seven years ago "to live with some woman" and she had been living on her own since that time. She also testified that at the time the parties separated in 2005, Husband gave her a quit claim deed on the marital residence "with no income to support [the house]. It was run down." She related the home went into foreclosure after several years and she had to "sell it really quick for cheap money" so she sold the home for $4,500.00 with $1,700.00 going to pay off the mortgage. She admitted that she netted $2,100.00 from the sale of the home

and that she only gave Husband $20.00 or $30.00 from the sale.

When asked how she had been making ends meet, Wife related that she was "[v]ery hardly" getting by and was "basically begging and borrowing." She stated she had applied for social security disability benefits and had a case pending at the time of trial. She admitted that she had actually been denied benefits on the basis that it was determined she "could do laundry" and she planned on continuing to pursue receiving benefits. She stated she lived in an "income housing" apartment; paid no rent; and could not afford her medicines and necessary toiletries. She related she was not capable of working "[d]ue to [an] injury to [her] arm" and a tumor on her brain stem. Wife testified that Husband collected disability and received financial support from the woman with whom he lives. She related Husband had no other income or assets that she was aware of other than his disability payments.

Husband testified he received a college degree in "[m]ental health, mental retardation counseling" prior to the parties moving to Missouri. At some point in time, he had also worked at a McDonald's restaurant and as a home health aide, but he was unsure of the dates of those positions. He stated it had, however, been two and half years since his last job as a pressman for a printing company. He also testified his only income was from what he received for social security disability due to his back problems and psychological issues. He related he had "two

---

Gossett v. Gossett, 98 S.W.3d 899, 900 (Mo. App.2003) (quoting Perkel v. Stringfellow, 19 S.W.3d 141, 145 (Mo.App.2000)) (emphasis omitted).

4. It appears from the docket sheets in this case that Husband failed to appear at a hearing in July of 2010 and the trial court noted:

Wife "DECIDES TO REQUEST $400[.00] A MONTH MAINTENANCE JUDGE SETS CASE FOR TRIAL. [HUSBAND] NOTIFIED AND NEEDS TO APPEAR IF NOT IN AGREEMENT TO MAINTENANCE." Husband then appeared for the August trial.

rods in [his] back, six screws" one of which "pinches the nerve constant" such that he takes 30 milligrams of morphine three times a day. He testified he was also on "two types of medicine for suicide" because he had tried to commit suicide "a couple of times," most recently a year prior to trial. Husband admitted the home he and his girlfriend reside in was owned by her father; that her parents provided them with a vehicle; that she also received social security disability payments; and that her father had arranged for him to have representation at trial. Husband also related he did not know if Wife was capable of working and admitted that other than "a pack of cigarettes or something here or there" he had not provided support to her in the years since their separation.

A copy of Husband's "income and expense statement" was entered into evidence and he agreed that it properly set out that he received $1,266.00 per month in social security disability.[5] He related he pays $300.00 per month in rent, $44.00 per month in utilities, and $96.50 for insurance and medication. Further, he testified he pays $208.00 per month on debts as well as $40.00 a month for his prescription account and $20.00 in tithes to his church. Husband also related his miscellaneous expenses for food, clothing and other items was $577.00 per month such that at the end of the month he might have $20.00 left over from his disability payment. He stated he "definitely" lived "from check to check" and typically got clothes and other items from charity organizations. He stat-

ed he could not pay any amount to Wife for maintenance.

At the close of all the evidence, the trial court made the following oral ruling from the bench: "I'm going to give [Wife] 400 bucks a month. And, you know, [Husband] move[d] out and ... got a girlfriend that's got money and her dad is helping support [Husband], and [Wife] ... doesn't have anything. And so—[Husband, you] haven't paid anything, so you can pay some money." In its form judgment of August 24, 2010, the trial court then dissolved the parties' marriage, restored Wife to her maiden name of Hagerty, and ordered Husband "to pay to Wife the sum of $400[.00] per month as and for maintenance."[6] This appeal by Husband followed.

This court must affirm the trial court's decision awarding maintenance "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *In re Marriage of Glascock,* 306 S.W.3d 205, 207 (Mo.App.2010); Rule 84.13(d). The trial court is afforded broad discretion in awarding maintenance. *Stirewalt v. Stirewalt,* 307 S.W.3d 701, 706 (Mo.App.2010). " 'Unless the amount is patently unwarranted, or is wholly beyond the means of the spouse who pays, interference by this [C]ourt is inappropriate.' " *Potts v. Potts,* 303 S.W.3d 177, 192 (Mo. App.2010) (quoting *McMullin v. McMullin,* 926 S.W.2d 108, 112 (Mo.App.1996)). "This [C]ourt defers to the trial court's ability to assess the credibility of witnesses." *Stock v. Stock,* 158 S.W.3d 284,

---

**5.** A copy of this document is contained in the legal file as an attachment to the trial court's judgment.

**6.** Neither party in this matter requested specific findings of fact and conclusions of law pursuant to Rule 73.01(c). In matters involving maintenance there is no requirement that

the trial court set out the specific statutory factors it considered in making its determination. *See Hall v. Hall,* 336 S.W.3d 188, 199 (Mo.App.2011).

All rule references are to Missouri Court Rules (2011).

290 (Mo.App.2005). The burden is on the party contesting maintenance to prove that the maintenance award shocks the appellate court's sense of justice. *Miller v. Miller*, 309 S.W.3d 428, 434 (Mo.App.2010).

■ In his first point relied on Husband maintains the trial court erred in awarding maintenance to Wife in the amount of $400.00 per month because such an award was not supported by the evidence. We agree.

"The determination of whether to award maintenance under section 452.335.1 is a two-step procedure."[7] *Elrod v. Elrod*, 144 S.W.3d 373, 380 (Mo.App.2004). "In the first step, section 452.335.1 requires the trial court to find that: (1) the party seeking maintenance lacks sufficient property, including marital property apportioned to that spouse, to provide for his or her reasonable needs; and (2) the party seeking maintenance is unable to support herself through appropriate employment." *Id.* Once the trial court makes these findings, section 452.335.2 requires that the trial court, in determining the amount and duration of its maintenance award, consider the ten factors enumerated in the statute and " 'balance the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay.' " *Linton v. Linton*, 117 S.W.3d 198, 205 (Mo.App.2003) (quoting *Myers v. Myers*, 47 S.W.3d 403, 409 (Mo.App.2001)).

The threshold question, therefore, is whether, pursuant to section 452.335.1, Wife proved she lacked sufficient property to provide for her reasonable needs and was unable to support herself through appropriate employment. Here, Wife testified she had no means of supporting herself. Further, there was no evidence that any marital or other property was apportioned to her by the trial court and there was no evidence that Wife had any addi-

tional assets available to her. Following the parties' separation, she retained the marital home but it was lost in a foreclosure several years prior to the dissolution action. Wife testified that although she did not have to pay rent, she did have unspecified expenses for her prescriptions, food, and personal items. Wife stated she was "basically begging and borrowing" and "very hardly" getting by. She testified she could not afford even the barest of necessities such as toilet paper. The trial court found her testimony to be credible.

Regarding her ability to attain employment, Wife testified that she had not been employed in over ten years; that she had held one or two jobs in the twenty years the parties were married; and that she had her GED. She appeared in court with her arm in a cast and detailed her medical ailments such as repeated surgeries on her arm and the development of a brain tumor. She admitted she had been denied disability benefits, but was adamant in her assertions that she was unable to secure appropriate employment. While we are mindful that a spouse typically has a duty to become self-sufficient by seeking employment, *Comninellis v. Comninellis*, 147 S.W.3d 102, 108 (Mo.App.2004), as already stated, we defer to the credibility determinations of the trial court as it was present and able to evaluate the demeanor and physical appearance of the witnesses. *Simpson v. Strong*, 234 S.W.3d 567, 583 (Mo.App.2007). Accordingly, we find there was sufficient evidence to demonstrate Wife could not meet her reasonable needs through appropriate employment and that an award of maintenance to Wife was correct.

■ Finding no error in the trial court's determination that Wife meets the threshold requirements for maintenance, we now consider whether the amount

---

7. All statutory references are to RSMo 2000.

awarded by the trial court was supported by sufficient evidence. Such a determination is made by turning to the ten factors set out in section 452.335.2 and balancing Wife's needs with Husband's ability to pay. *Linton,* 117 S.W.3d at 205. The problem in the present matter is that Wife has failed to introduce any evidence as to any amounts associated with her reasonable needs. She simply requested $400.00 per month in maintenance from the trial court and offered no evidence to show the actual amount of her reasonable needs.

> It is well settled that under [section] 452.335.1, a party seeking maintenance must prove need before such an award can be made. The basic test is the reasonable needs of the recipient spouse. Without some evidence of reasonable need, a maintenance award is not proved. A mere request for maintenance of a specified amount is insufficient to support a maintenance award.

*In re Marriage of Moyers,* 272 S.W.3d 500, 503 (Mo.App.2008) (quoting *In re Marriage of Murphy,* 71 S.W.3d 202, 205 (Mo. App.2002)) (internal quotations omitted). Here, Wife presented no evidence of her monthly expenses, the costs of her medical care and medications, or the amount necessary to provide for her living expenses such as food, clothing and toiletries. "Therefore, the record contains no evidence proving Wife's reasonable needs. In the absence of such proof, the trial court abused its discretion in awarding Wife the sum of $[400.00] per month as maintenance." *Id.* at 503; *see In re Marriage of Ross,* 231 S.W.3d 877, 886 (Mo. App.2007).

■ As set out by this Court in *Moyers,* 272 S.W.3d at 503,

> It is evident the trial court believed that Wife needed a maintenance award and that the evidence presented below would support such an award. While the court's decision was in error, Wife was

the prevailing party on this issue. If a litigant, by mistake or inadvertence, fails to produce sufficient evidence at trial to prove his claim, in a situation where the proof seems to be available, the case should be remanded to permit the introduction of additional evidence.

(internal quotation omitted). Accordingly, the cause is remanded. The trial court is directed to take such additional evidence and testimony as may be required from both parties to determine Wife's reasonable needs and Husband's ability to pay maintenance. Point I is granted.

Based on our determination in Point I, Husband's second point relied on is moot. *Id.*

The portion of the judgment awarding Wife $400.00 a month maintenance is reversed and the cause is remanded for the taking of additional evidence on the issues set forth above. In all other respects, the judgment is affirmed.

BATES and SCOTT, JJ., concur.