

# Missouri Court of Appeals

## Southern District

### Division One

RICHARD E. BEECHER,      )
                                  )
            Appellant,      )
                                  )
     vs.                 )  No. SD32620
                                  )
TERRY L. BEECHER,        )  FILED: January 21, 2014
                                  )
          Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Daniel W. Imhof, Judge

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS

Richard and Terry Beecher were wed 27 years when he filed for dissolution. He was a highly compensated petroleum engineer. Terry was disabled. The marital estate was sizeable. A 2010 trial ultimately resulted in a March 2013 Third Amended Judgment granting Terry maintenance, attorney fees, and 52.5% of the marital property.

Richard complains that the court used stale values, misclassified Richard's unvested employee stock rights as marital property, and erred in awarding

maintenance and attorney fees.  We must reverse in part and remand to address a miscalculation in the judgment, which we affirm in all other respects.

## Principles of Review

We will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law.  ***Barth v. Barth***, 372 S.W.3d 496, 503 (Mo.App. 2012).  We view the evidence most favorably to the result, disregard contrary proof, assume all fact issues were resolved in favor of the judgment entered, and defer to the trial court even if the record might support a different conclusion.  ***Id***.  The trial court was free to believe or disbelieve all, part, or none of any witness testimony.  ***Ruffino v. Ruffino***, 400 S.W.3d 851, 856 (Mo.App. 2013).

The trial court had broad discretion in granting maintenance, dividing marital property, and awarding attorney fees.  ***Coleman v. Coleman***, 318 S.W.3d 715, 719 (Mo.App. 2010).  We review such decisions for abuse of discretion, finding this only when an award is so illogical, arbitrary, and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.  ***Barth***, 372 S.W.3d at 503.  Discretion was not abused if reasonable persons could differ as to whether the court acted properly.  ***Id***.

## Background

The appellate record exceeds 3000 pages.  We cite only what is needed to understand our disposition of Richard's points.  The following timeline is relevant to Points I and II.

2

| | |
|---|---|
| April 2010 | Four-day trial. |
| December 2010 | Richard provides updated values. |
| June 28, 2011 | Judgment divides marital estate 50/50 per updated December 2010 values, requires parties to exchange updated values as of judgment date, and provides that parties will equally share any increase or decrease in values up to judgment date. |
| July 8, 2011 | First Amended Judgment entered correcting typographical errors. |
| July 20, 2011 | Richard provides updated values as of June 2011 judgment date, and moves for rehearing or other relief. Terry also moves for rehearing. |
| August 2011 | Motions for rehearing granted. Case remanded to Family Court Commissioner to consider correcting math errors, if any, and for other considerations deemed appropriate by Commissioner. |
| December 5, 2012 | Parties appear in court per Terry's request to set all motions and case for hearing. |
| January 14, 2013 | Second Amended Judgment entered. Still recites December 2010 values, requires parties to exchange updated values as of this judgment date, and provides that parties will equally share any increase or decrease in values up to this judgment date. |
| January 28, 2013 | Richard moves to amend the judgment or for rehearing, etc., resubmits June 2011 values, and directs court's attention thereto. Terry also moves for rehearing. |
| February 8, 2013 | Motion hearing. |

| | |
|---|---|
| March 12, 2013 | Third Amended Judgment entered, now dividing marital property 52.5% to Terry and 47.5% to Richard. Still recites December 2010 values, requires parties to exchange updated values as of this judgment date, and provides that parties will equally share any increase or decrease in values up to this judgment date. |
| March 20, 2013 | Richard files notice of appeal.[1] |

## Point I – Failure to Use Current Values

Richard charges trial court error "in failing to use current values" in the Third Amended Judgment. He alleges that marital property values "changed significantly from the date of trial to the date of the original Judgment to the date of the Third Amended Judgment almost three years after the trial of the case …." Citing *Marriage of Gustin*, 861 S.W.2d 639 (Mo.App. 1993), Richard notes that if property valuation is not reasonably proximate to the distribution date, "the court should hold another hearing to establish a valuation as close to the effective date of the division as possible." *Id*. at 644.

Yet such delay "is not, in itself, grounds for reversal; a party must show that he or she was prejudiced as a result of the delay." *Marriage of Wood*, 262 S.W.3d 267, 274 (Mo.App. 2008); *see also Marriage of Foster*, 391 S.W.3d

---

[1] We deny Richard's request to supplement the appellate record with information never offered or considered in the trial court. Documents not considered by the trial court or made part of its record "cannot be introduced into the record on appeal, *Winston v. Dir. of Revenue*, 137 S.W.3d 502, 505 (Mo.App. E.D.2004), and we cannot consider them, *Southwestern Bell Media, Inc. v. Ross*, 794 S.W.2d 706, 708 (Mo.App. E.D.1990)." *In re J.M.*, 328 S.W.3d 466, 469 (Mo.App. 2010).

500, 504 (Mo.App. 2013).  *Foster* involved a two-year delay, due to interim legal proceedings, between trial and the judgment on appeal.  We rejected the husband's "stale values" complaint because he never offered evidence of values more current.  391 S.W.3d at 503.  "It is Husband who claims error in the stale values and yet produced no evidence of a different value while the case was pending before the trial court."  *Id*. at 504.  "We do not assume that those values were out of date.  If Husband disagreed with the values from the first hearing, he should have provided evidence to the trial court that contradicted those findings."  *Id*.

Similarly, Richard complains that the Third Amended Judgment did not cite "current" values, yet he offered no such proof.  In 2013, he was still citing 2011 values, but apparently did not prove up even those.[2]  We will not convict a trial court of error when a litigant with the opportunity and burden to show current value failed to offer such evidence.  *Id*.  Point denied.[3]

---

[2] As "proof" of June 2011 values, Richard cites an affidavit and attachments twice-filed with the circuit clerk (in support of July 2011 and January 2013 motions; see timeline *supra*), without explaining why we should view this as evidence.  "Absent a stipulation of the parties, there is no authority for treating affidavits as evidence."  *Stanfill v. Stanfill*, 505 S.W.2d 438, 439 (Mo.App. 1974) (financial information filed in connection with motion to modify); *see also* *Jhala v. Patel*, 154 S.W.3d 12, 20 (Mo.App. 2004) ("Missouri courts have consistently held without exception that in the absence of a stipulation of the parties, there is no authority for admitting an affidavit as evidence at trial."); *State v. Zimmerman*, 886 S.W.2d 684, 691 (Mo.App. 1994) (absent stipulation, affidavit is not to be treated as evidence).

[3] Because we find no error, we need not consider whether Richard invited error by representing to the court more than two years post-trial that property values

## Point II – Unvested Stock Rights

Richard challenges the division, as marital property, of his employee stock rights granted prior to June 28, 2011, but not vesting until March 2012 and March 2013. We summarize his two-step argument for reversal:

1. The marriage was dissolved when the initial judgment was entered on June 28, 2011; and

2. Stock rights vesting after dissolution were Richard's separate property because he testified that they represented future compensation, they were offered as an incentive to stay employed, vesting was contingent on continuing employment, and the stock was subject to significant pre-vesting restrictions.

Terry disagrees. She urges that the marriage continued until final judgment (*i.e.*, the Third Amended Judgment on March 12, 2013), by which date all such rights had vested, or alternatively that these rights were marital property in any event.

Given our standard of review, Point II fails even if Richard is correct about when the marriage ended. We find guidance in ***Warner v. Warner***, 46 S.W.3d 591 (Mo.App. 2001), where the husband likewise charged error in treating stock options as marital property. He claimed, like Richard, that his stock rights were for future services; they were to vest after dissolution; and their vesting, maturity, and exercise were contingent on continued employment. Our Western District

---

had not changed drastically or could be determined by applying percentages, or by claiming in the trial court that ***Gustin*** was distinguishable but urging the contrary here.

affirmed after an extended review of Missouri and out-of-state cases that we need only summarize.

The options in **Warner**, as here, were acquired during marriage and not by any method that would exempt them from marital property under §452.330.2. *Id*. at 601. "Missouri courts have uniformly and without exception held that property acquired during the marriage, including that acquired after the filing of a dissolution action but before the entry of the dissolution decree, is marital property." *Id*.

Option awards are not always for future service; they may represent compensation for past, present, *or* future services. *Id*. at 598-99 (citing *In Re Marriage of Hug*, 154 Cal.App.3d 780, 786 (1984)).

Any argument that options could not be treated as marital property due to contingencies was "discredited" by Missouri dissolution cases dealing with pension plans. *Id*. at 596. Further Missouri precedent for treating contingent options as marital property was found in **Smith v. Smith**, 682 S.W.2d 834 (Mo.App. 1984), where it was "held that all the employment stock options granted to the husband during the marriage were marital property even though a substantial portion of the options could not be exercised until after the termination of the parties' marriage and would be forfeited if the husband did not continue his employment." **Warner**, 46 S.W.3d at 600.

Ultimately, the **Warner** court concluded that "[t]he trial court applied the law in a fashion consistent with *Smith,*" the record did not compel a finding "that

7

the options were entirely related to future performance," and it was presumed per Rule 73 that the court found facts accordingly. *Id*. at 601, 602.[4] "Accordingly, the court could have reasonably found that the stock options were all marital property subject to division." *Id*. at 602.

What we have recited from *Warner* could be said and found here. The trial court plainly rejected Richard's testimony that his stock rights were future compensation, as that court was entitled to do.[5] *Ruffino*, 400 S.W.3d at 856. A trial court abuses its broad discretion in identifying property as marital or separate only when its ruling is so clearly illogical, arbitrary, unreasonable, and ill-considered as to shock one's sense of justice. *See Coleman*, 318 S.W.3d at 719-20. That is not the case here.[6] We deny Point II.

---

[4] "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached" in a bench-tried case. Rule 73.01(c).

[5] It seems worth noting that Richard's stock award letters (1) describe the grants in past tense and (2) indicate Richard's right and ability to treat the grants as current compensation. The award letter dated March 25, 2008, for example, tells Richard that "[e]ffective March 13, 2008, you were granted 2,200 Restricted Shares, which vest over a period of time," and that "[y]ou may elect, at the time of grant, to treat the fair market value of the restricted shares on the date of grant as compensation income instead of the value on the date of the vesting period."

[6] This defeats, as well, Richard's passing effort to characterize these rights as post-dissolution income. At any rate, Richard's reliance on *Brill v. Brill*, 65 S.W.3d 583 (Mo. App. 2002), is misplaced because the trial court in *Brill* "expressly found the severance pay contract was a substitute for ... future lost wages and implicitly found it was not earnings for work performed during marriage." *Id*. at 587.

## Point III – Maintenance

That Richard leaves no stone unturned in attacking the award of maintenance to Terry is seen in his complaint that the trial court "*reduced* the maintenance award from $5,000 in the Second Amended Judgment to $4,500 in the Third Amended Judgment," but "did not give any reason or justification for the *reduction* in the maintenance award" [our emphasis].

Suffice it to say, with one exception, that this and all of Richard's arguments fail in light of our standard of review. The trial court enjoyed "broad discretion in awarding maintenance." ***DiRusso v. DiRusso***, 350 S.W.3d 464, 467 (Mo.App. 2011). "Unless the amount is patently unwarranted, or is wholly beyond the means of the spouse who pays, interference by this court is inappropriate." ***McMullin v. McMullin***, 926 S.W.2d 108, 112 (Mo.App. 1996), *quoted in **DiRusso***, 350 S.W.3d at 467. Richard's burden is "to prove that the maintenance award shocks the appellate court's sense of justice." ***DiRusso***, 350 S.W.3d at 468. On this record, given Terry's disability, $4,500 per month is not shocking, patently unwarranted, or wholly beyond Richard's ability to pay.

Yet remand is necessary in one respect. Terry concedes, to quote her brief, "the trial court's mathematical error of finding [her] needs to be $185.33 higher than shown in its findings ...."[7] Although we deny Point III in all other respects,

---

[7] Richard's motion to amend the Second Amended Judgment six weeks earlier cited the same error. In our view, in this instance, Rule 78.07(c) did not require yet another motion after the court refused or failed to correct this in its Third Amended Judgment.

we reverse the maintenance award as to this addition error and remand with directions to correct it and to enter a judgment adjusting maintenance accordingly, if appropriate.

## Point IV – Attorney Fees

Richard claims Terry should be responsible for her post-trial legal expenses which the court ordered Richard to pay. Richard decries these expenses as unreasonable, unnecessary, and excessive.

The trial court is deemed an expert on necessity, reasonableness, and value of attorney fees. *Potts v. Potts*, 303 S.W.3d 177, 196 (Mo.App. 2010). We presume the court's decision is correct; we will reverse only for abuse of discretion. *Id*. Richard's superior ability to pay may not compel an award of attorney fees, but will suffice to support such an award. *Id*. at 191, 196.

The trial court received itemized bills from Terry's attorney and Richard's brief pressing the same arguments that he raises here. Granting the trial court due deference, we cannot say its attorney fee award was an abuse of discretion. Point denied.

## Conclusion

We grant Point III in part, but only with respect to the $185.33 mathematical error as conceded by Terry. We reverse the maintenance award and remand with directions to correct this error and to enter a judgment adjusting maintenance accordingly, if appropriate. Otherwise, we deny Point III

10

and all other points. Except as stated above, we affirm the judgment in all respects.


DANIEL E. SCOTT, J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. – CONCURS

GARY W. LYNCH, J. – CONCURS