Debera J. SANDERS, Appellant,

v.

John M. SANDERS, Respondent.

No. 67085.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 12, 1996.

William K. Meehan, William K. Meehan, P.C., Clayton, for Appellant.

John K. Greider, Clayton, for Respondent.

SIMON, Judge.

Appellant, Debera J. Sanders (wife) appeals from the trial court's Decree of Dissolution from John M. Sanders (husband).

On appeal she contends that: (1) the part of the decree allocating the marital and non-marital portions of the United Parcel Service's (UPS) stock to husband and wife is so vague and ambiguous that it renders that portion of the decree unenforceable and a nullity; (2) the part of the decree which required wife to share the tax consequences of any liquidation of the stock is erroneous because it is a conditional judgment which is necessarily dependent on future events; and (3) the trial court erred when it characterized 489 of husband's shares of stock as separate under the definition of marital property. We affirm.

The decree must be affirmed if it is supported by substantial evidence, it is not against the weight of the evidence, and it neither erroneously declares nor applies the law. *Carter v. Carter*, 901 S.W.2d 906, 909[1–3] (Mo.App.E.D.1995). We must accept as true the evidence and permissible inferences therefrom in the light most favorable to the decree and disregard all contrary evidence and inferences. *Id.* Where there is a conflict in testimony, we defer to the trial court's determination of the credibility of the witnesses. *Id.*

In a light most favorable to the decree, the record indicates that husband and wife were married on October 16, 1982. Two children were born of the marriage. Wife served as a homemaker and was self-employed at various times during the marriage. At all times husband was employed at UPS. The parties' assets were separate and marital as husband had been employed at UPS for approximately sixteen years prior to his marriage. During his tenure with UPS, he acquired stock in the company through purchases, automatic payroll deductions and a Managers Incentive Plan (the Plan).

The Plan provided that a stock bonus would be given to each qualified employee based upon his performance October 1 through September 30 of a given year. A committee would meet in November of each year to review performance records and send out notices to qualified employees stating how many shares each employee was entitled to receive based upon the position held with the company, the performance of the employ-

ee, and the profits posted by UPS that year. However, the bonus was not posted to the employee's stock statement until the following February.

The trial court entered a decree on July 13, 1994. On July 18, 1994, the court withdrew its decree of July 13, 1994 and entered a new decree. Subsequently, wife filed a motion to amend the decree on August 5, 1994. In her motion, she contended that UPS will not transfer or hold in trust for her stock issued during the marriage to husband and therefore, to realize any value from her award, the stock must be sold. In addition, the selling of the stock will create tax consequences that need to be allocated between the parties or taken into account when calculating the division of the property.

On August 11, 1994, husband filed an answer to wife's motion and filed a motion for rehearing or in the alternative to amend the decree. On that same day, the trial court ruled on wife's motion, granting it in part and denying it in part. In its order, the court amended the decree reflecting concerns about allocating possible tax consequences.

On October 3, 1994, the trial court ruled on husband's motion, granting it in part, denying it in part and clarifying its August 11, 1994 order. The trial court made amendments to the decree on October 12, 1994, issuing further answers to wife's motion of August 5, 1994. The final decree issued by the court reads in pertinent part:

9. The Court finds that Husband earned 751 shares of stock prior to marriage. Husband's Exhibit T indicates a stock split in 1982 and 1991. The Court further finds that any stock acquired by Husband after the date of marriage which is the result of the stock split of those 751 particular shares is Husband's separate property.

10. The parties are possessed of certain separate, non-marital property, to-wit: ...

B. *Separate Property of Husband*

2) The 751 shares of UPS stock earned by husband prior to the date of marriage and the shares of stock acquired thereafter in 1982 and 1991 by

way of a stock split of those particular shares.

\*   \*   \*   \*   \*   \*

11. In its division of marital property, the Court is guided by Section 452.330, RSMo. and has determined that each of the parties has contributed to the acquisition of the marital property, the economic circumstances of each of the parties at the time the division of property is to become effective, the conduct of the parties during the marriage, and the value of the property set apart to each of the parties, and the custodial arrangements for the minor children.

\*   \*   \*   \*   \*   \*

22. All right, title and interest in the parties marital property, listed with their approximate net equity values if known, are awarded and vested in the respective parties as set forth below:

A. *Marital Property Awarded to Wife*

5) Fifty percent (50%) interest in UPS stock after Husband receives that stock designated as separate.

\*   \*   \*   \*   \*   \*

B. *Marital Property Awarded to Husband*

5) Fifty percent (50%) interest in UPS stock after Husband receives that stock designated as separate.

\*   \*   \*   \*   \*   \*

F. In dividing the shares of UPS stock between Husband and Wife, the Court intends to divide the shares equally, and those shares of UPS stock designated as marital are divided equally between the parties per issuance.

G. If property now titled in Husband's name must be liquidated to satisfy the terms of the Decree as it pertains to setting aside property to Wife and if said liquidation results in tax consequences to Husband, then Wife shall share equally in said tax consequences ...

■ Initially, we consider wife's third point because the dispute as to the characterization of the shares of stock should be resolved before reviewing other points. In her third point, she contends that the trial court

erred when it characterized 489 shares of husband's stock as separate under the definition of marital property. The trial court determined that 751 shares of stock were husband's separate property. Wife only disputes the court's determination as to 489 shares which were posted to husband's account in February some four months after the marriage.

Husband testified on direct that the management incentive awards were always based upon performance through September 30th of the year prior to receiving them and that he earned them prior to the marriage. Furthermore, he stated that "this is his reason for claiming that the 489 shares of stock were his separate property." Throughout cross-examination, redirect and recross, husband continued to testify that any stock incentive bonus he received in 1983 was based upon his actions prior to the marriage.

[Wife's attorney]: Okay, I'm asking you, this states that actual payment is made to you the February of the year following the year you actually earn your stocks; is that correct?

[Husband]: I don't know what payment means. I know that I earned that money the year prior. And if I would quit or, God forbid, die, that [sic] money would still be present. That money would be paid to my heirs or to me or whatever now.

Husband also introduced, with no objection from wife, two exhibits. One was the "UPS Managers Incentive Plan Awards" prospectus for 1994 describing the Plan, to whom awards are paid and how the amount of each award is determined. The pamphlet sets forth that an employee's work, twelve months prior to September 30th of each year, is reviewed by the employee's supervisor. A decision is reached in November of that year by a committee as to if an employee is eligible to receive a bonus based upon his performance, position with the company and company profits. The bonus is then paid in February of the next year. As the testimony of husband indicates, the pertinent part of the pamphlet provides:

To be eligible to receive awards under the Plan, an employee must be a Center Supervisor or have equal or greater manage-

rial, supervisory or technical responsibilities. In November of each year the Salary Committee selects the employees who are to receive awards, primarily on the recommendation of their ... managers, and the awards are sent to the individuals in February of the following year ...

UPS generally sets aside for awards under the Plan an amount equal to 15% of UPS's consolidated profits before federal income taxes, exclusive of certain capital gains and losses, for the twelve months ended the September 30 immediately preceding the date of the set-aside ... The total amount set aside ... was then divided among all of the individuals selected to receive awards in proportion to their monthly salary rates on September 30 ...

Husband's second exhibit is a letter sent to him by UPS dated January 31, 1994, showing how many shares he is eligible to receive in February, 1994 for the work he performed for the year prior to September 30, 1993.

Husband's testimony about these two exhibits stated that the period of earning the bonus has always been the twelve months ending on September 30, that a decision is reached in November as to how many shares each eligible employee will receive and that the posting of the bonus always occurred the following February.

Under the "source of funds" rule, whether property is characterized as marital or separate depends on the source of funds financing the purchase. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 824[6] (Mo.1984). The property is considered to be acquired as it is paid for, *Id.*, not when title passes. *Moritz v. Moritz*, 844 S.W.2d 109, 112[3] (Mo.App. W.D.1992). The Supreme Court of Missouri defined the statutory term "acquired" as an on-going process of making payments for property. *Hoffmann*, 676 S.W.2d at 825. Labor as well as other assets can contribute to the acquiring of property. *Meservey v. Meservey*, 841 S.W.2d 240, 245[4] (Mo.App.W.D.1992).

Applying these principles, we conclude that husband's 489 shares of stock were acquired as a result of his labor for the year October 1, 1981 through September 30, 1982. Wife

does not dispute husband's testimony to this effect. Thus, the trial court correctly deemed the 489 shares of stock separate property. Point denied.

In her first point on appeal, wife contends that the part of the decree allocating the marital and non-marital portion of the UPS stock to husband and wife is so vague and ambiguous that it renders that portion of the decree unenforceable and a nullity.The decree provides that 751 shares of UPS stock, plus any stock splits of those shares are husband's separate property. The remaining shares of stock are to be divided equally between the parties. Wife contends that because the trial court did not indicate the total amount of shares held by husband, she cannot determine how many shares she is to receive.

■ Generally, for a decree or judgment to be enforceable, it must be definite and certain. *Glassberg v. Obando*, 791 S.W.2d 486, 488[4] (Mo.App.1990). An obscure judgment, however, may be construed with reference to the pleadings and record, and where on the whole record its sense can be clearly ascertained, the judgment will be upheld. *In re Marriage of Melton*, 816 S.W.2d 232, 238[2] (Mo.App.1991). If the decree, however, is so amorphous, indefinite, vague and uncertain that it requires a subsequent hearing, more than mere ministerial computations, to determine its meaning the decree is void and unenforceable. *Glassberg*, 791 S.W.2d at 490; *Butler v. Butler*, 870 S.W.2d 953, 957[9] (Mo.App. E.D.1994).

■ The decree does not expressly state the total number of shares held by husband, however, we look to the record for further information. *Melton*, 816 S.W.2d at 238[2]. We also note that any change in value of husband's separate shares, due to stock splits, retain their separate character. *Welch v. Welch*, 821 S.W.2d 560, 561[1] (Mo. App. E.D.1991).

Husband testified that the total number of shares were 13,257. Wife made no objection nor did she offer any contradictory information. Further testimony indicated that over the course of the trial, which took place on three non-consecutive days spanning four

months, six more shares of stock were added by way of a payroll deduction purchase, bringing the total to 13,263.

Reviewing the record, it is clear that husband acquired 103 shares in 1981 and 159 shares in February 1982. There was a four-to-one (4–1) stock split on these shares in 1982 giving him an additional 786 shares bringing his total to 1,048. In addition, as was discussed above, he is entitled to the 489 shares of stock he earned through the Plan prior to the marriage in October but posted to his account in February, 1983. His total stands at 1,537. The record further indicates a second (4–1) stock split in August of 1991 giving him an additional 4611 shares. Husband's total separate shares number 6,148.

This is consistent with the number the trial court deemed to be husband's separate property. The court deemed 751 shares, and the stock splits attributed to those shares, to be husband's separate property. The 751 separate shares and the stock splits attributed to the shares, equal 6,148 shares. Subtracting husband's separate shares from the total shares leaves 7,115 marital shares. The decree states that these shares are to be divided equally between the parties per issuance. Thus, we are able to clearly ascertain from the decree and record the number of separate and marital shares. *Melton*, 816 S.W.2d at 238[2]. Point denied.

In her second point on appeal, wife contends that the part of the decree which required wife to share the tax consequences of any liquidation of the stock is erroneous because it is a conditional judgment.

■ Generally, where the enforcement of a judgment is conditional upon the occurrence or non-occurrence of future acts, the performance or non-performance of which is outside the record, the judgment is deemed indefinite and unenforceable. *Burch v. Burch*, 805 S.W.2d 341, 343[5–7] (Mo.App. 1991). Unless a judgment is susceptible of enforcement without requiring the resort to external proof, it is void. *Id.*

■ The decree is explicit in its holding: "the shares of UPS stock designated as marital are divided equally between the parties per issuance." This is not conditioned upon

the actions or inactions of either party. No external proof is needed to enforce the decree and therefore the decree is not conditional. The paragraph wife complains of concerns the method of satisfying the decree. The trial court allowed for an alternative for satisfaction of its decree if one of the listed alternatives is not feasible due to any restrictions which may be placed upon the privately held stock. In its desire to divide the marital stock equally, and in response to each of the parties' concerns about the allocation of tax consequences as reflected in their motions, the court provided for the sharing of tax consequences if the stock has to be liquidated to satisfy the decree. Point denied.

Judgment affirmed.

RUSSELL, P.J., and KAROHL, J., concur.