**Lawrence AURICH, Appellant–Respondent,**

v.

**MARIA E. AURICH, Respondent–Appellant.**

**Nos. WD 60572, WD 60601.**

Missouri Court of Appeals,
Western District.

July 31, 2003.

Leonard L. Meyer, Independence, MO, for appellant-respondent.

Anita I. Rodarte, Kansas City, MO, for respondent-appellant.

Before ELLIS, C.J.,
BRECKENRIDGE and SMITH, JJ.

PATRICIA BRECKENRIDGE, Judge.

Lawrence Aurich (Husband) appeals the trial court's judgment dissolving his marriage to Maria E. Aurich (Wife). On appeal, Husband alleges error in (1) the custody order; (2) the award of maintenance to Wife; (3) the award of attorney's fees to Wife; and (4) the calculation of child support. Wife cross-appeals, claiming that the trial court erred in limiting the duration of the maintenance award to sixty months. This court finds that the trial court did not err in making the custody order, awarding Wife maintenance, awarding Wife attorney's fees, or in calculating child support. The trial court did, however, err in limiting the duration of Wife's maintenance to sixty months. Accordingly, the judgment of the trial court is affirmed, in part, and reversed, in part, and remanded.

## I. Factual and Procedural Background

Husband and Wife were married on June 7, 1986. They have two children. Wife also has another daughter, who was born before the marriage and was legally adopted by Husband. All three children are unemancipated.

Husband and Wife separated on December 23, 1997. Approximately one month later, Husband filed a petition for dissolution of marriage. In his petition, Husband asked, *inter alia*, to be granted sole legal and physical custody of all three of the parties' children. Subsequently, Wife filed a cross-petition for dissolution of marriage. In her petition, Wife also asked to be awarded sole legal and physical custody of the parties' children. In addition, Wife requested child support and maintenance.

A hearing was held before a commissioner on February 13 to 16, 2001, and March 9, 2001. On September 4, 2001, the commissioner entered his findings and recommendations for judgment of dissolution of marriage, which were adopted by the trial court as its judgment. In its judgment, the trial court awarded Husband and Wife joint legal and physical custody of the children, with Wife's residence designated as the children's residential address for mailing and educational purposes. Husband was awarded frequent and regular parenting time with the children, and he was ordered to pay child support in the amount of $1,230 per month. Concerning Wife's request for maintenance, the trial court ordered Husband to pay Wife $1,000 per month as maintenance for a period of sixty months and made this order modifiable. The trial court also or-

dered Husband to pay $3,000 of Wife's attorney's fees. Husband and Wife both appealed.

Before addressing the parties' points on appeal, this court will address Wife's motion to strike Husband's brief because his statement of facts does not comply with Rule 84.04, in that it is "conclusory, argumentative, omit[s] all references to any facts which would support the judgment or which contradict his characterization of the facts and, in other instances, fail[s] to contain any specific reference to the legal file or the transcript." This court agrees that Husband's statement of facts is deficient. Nevertheless, because the appeal involves child custody, this court will deny Wife's motion.

## II. Standard of Review

■■■ "This court will review the judgment of the trial court under the standard of review applicable to any other court-tried case." *Eckhoff v. Eckhoff,* 71 S.W.3d 619, 622 (Mo.App.2002). The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## III. Husband's Appeal

### A. No Error in Custody Order

■■■ In his first point, Husband claims that the trial court erred in making its custody order. When reviewing custody awards, this court gives the trial court "greater deference in child custody matters than in other matters." *Bedwell v. Bedwell,* 51 S.W.3d 39, 41 (Mo.App.2001). As such, this court must "defer to the trial court's assessment of witness credibility[,] accept its resolution of conflicting evidence[,]" and "presume that it reviewed all of the evidence and decided the matter in the children's best interests." *Riley v. Campbell,* 89 S.W.3d 551, 552 (Mo.App. 2002). Therefore, this court "will not disturb the trial court's judgment absent a showing that the welfare of the children requires a different disposition or the judgment is manifestly erroneous." *McDonald v. Burch,* 91 S.W.3d 660, 663 (Mo. App.2002).

In this case, the trial court stated that it made its custody determination after considering the public policy of this state, as set forth in section 452.375.4, RSMo 2000,[1] and the specific factors listed in section 452.375.2.[2] Because it rejected both par-

---

1. All statutory references are to the Revised Statutes of Missouri 2000.

2. *These factors include:*

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

ties' parenting plans, the trial court included detailed findings regarding each factor in section 452.375.2. Based on its findings, the trial court concluded that it was in the children's best interests to award joint legal and physical custody to Husband and Wife. The trial court designated Wife's residence as the children's residence for mailing and educational purposes. The trial court also awarded Husband frequent and regular parenting time with the children.

It should be noted that although the trial court awarded Husband and Wife joint physical custody of the children, both parties refer to the custody order as awarding Wife "primary physical custody" or "primary custody" of the children. This court has recently clarified, however, that the only types of custody provided for by section 452.375.1(1) are " 'joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof.' " *Loumiet v. Loumiet,* 103 S.W.3d 332, 336 (Mo.App.2003) (quoting section 452.375.1(1)). This court explained that "[i]n the context of joint physical custody, 'primary physical custody' is sometimes used to describe the custodial award where, although both parents are awarded significant periods of custodial time, one receives substantially more time, and 'primary physical custodian' is used to describe that parent." *Id.* at 338. Yet, this court went on to say that because of the confusion "this phraseology" can engender and "the stigma that some parents attach to one parent being designated the primary custodian[,]" "it would seem appropriate to abandon the 'primary' nomenclature in custody cases and employ the joint and sole terminology[.]" *Id.* Thus, since there is no "primary physical custody" or

"primary physical custodian," this court will assume that Husband is actually challenging the custody time awarded to both parents because, although both parties share joint physical custody, Wife was awarded more time with the children under the parenting plan than he.

In challenging the custody award, Husband first claims that the trial court erred in finding that there was no abuse by either party. In making a custody determination, the trial court must consider "[t]he mental and physical health of all individuals involved, including any history of abuse of any individuals involved." Section 452.375.2(6). Concerning this factor, the trial court found, "Neither party suffers from any significant mental or physical health condition that would impair his or her parenting of the children. The Court finds no abuse by either party."

Husband claims that the finding of no abuse is not supported by substantial evidence, is against the weight of the evidence, and constitutes a misapplication of the law and an abuse of discretion. Husband alleges that the evidence showed that Wife engaged in "a pattern of domestic violence," which included "smash[ing] dishes" in the presence of the children, "yell[ing], scream[ing] and curs[ing]" in the presence of the children, "smash[ing] the car into the garage wall, damaging' drywall and a panel in the family room," "chok[ing]" Husband, "[striking] [Husband] in the face with the television remote control," and making "at least five (5) unfounded claims of sexual abuse." Thus, Husband contends that "[t]he court should have determined that domestic violence had occurred, because it was undisputed that it had occurred[.]"

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.
Section 452.375.2.

■ Contrary to Husband's argument, the record reflects that the evidence of an alleged "pattern of domestic violence" was, in fact, disputed. Indeed, Wife testified regarding each instance of "domestic violence" raised by Husband and characterized the incidents differently than Husband. For example, while Husband testified that Wife "smashed" the car into the garage, Wife explained that she accidentally, rather than intentionally, hit the garage wall with her car. In addition, while Husband said that Wife "choked him" when he tried to wake up their daughter for school, Wife stated that Husband was trying to pull their daughter out of bed by her arm, so she "grabbed him by the collar and [she] just tried to shove him away from [the daughter], so that he can leave her alone." As for the remote control incident, Husband stated that when he turned off the television so he could talk to Wife, he "was met by her flailing arms" and she "struck [him] in the mouth" with the remote control, splitting his lip. Wife, on the other hand, testified that while she and Husband were watching television, she asked him if she could change the channel, and he handed her the remote control "in a very rough manner." She further testified that she then changed her mind about changing the channel, so she "tossed [the remote control] back to him," and, while it hit him in the lip, she did not intentionally try to hurt him. Wife also testified that although on one occasion she had broken two dishes to get Husband's attention and had, on occasion, cursed at Husband, she had never done so in front of the children. Because the evidence of the "domestic violence" was disputed, the trial court was not required to find that abuse had occurred. *Bedwell,* 51 S.W.3d at 42. The trial court did not have to accept Husband's testimony on these issues, and was free to believe, as it apparently did, Wife's version of the

events instead of Husband's. *Wallace v. Chapman,* 64 S.W.3d 853, 859 (Mo.App. 2002).

Likewise, Husband's characterization of Wife's five unfounded claims of sexual abuse as being abusive to the children was disputed at trial. The guardian ad litem testified that when Wife made her first allegation of sexual abuse in 1994, it was important that the issue of potential sexual abuse be raised at that time because of reports that had been made concerning the children. Regarding Wife's remaining claims of sexual abuse, the guardian ad litem testified that those were based on medical problems the children were having in their genital areas at the time. While the guardian ad litem acknowledged that the children have had to undergo extensive examinations that are not normally done for children of their ages, the guardian ad litem further stated that she applauded Wife for taking her concerns to health-care professionals rather than calling the DFS hotline or barring Husband from visitation.

In reviewing the trial court's finding of no abuse, this court, as previously noted, must view the evidence in the light most favorable to this decision and defer to the trial court's credibility determinations. *Riley,* 89 S.W.3d at 552. Applying this standard of review, the record contains substantial evidence supporting the trial court's finding that neither party had engaged in abusive behavior. In addition, a review of all of the evidence in the record, giving deference to the credibility determinations of the trial court, reveals that the trial court's finding of no abuse is not against the weight of the evidence, nor does it constitute a misapplication of the law or an abuse of discretion.

Husband next challenges the custody order by claiming that the trial court erred in making its finding regarding "[w]hich parent is more likely to allow the child

frequent, continuing and meaningful contact with the other parent[.]" Section 452.375.2(4).[3] The trial court, in its judgment, found that this factor did not favor one parent over the other. The trial court stated that "[a]lthough there was some conflict over visitation when the parties separated, after the initial turmoil of separation subsided, each parent cooperated in facilitating meaningful contact with the other parent." Husband argues that "[i]t was factually incongruent for the court to decide that [Wife] was more likely to allow frequent, continuing and meaningful contact with [Husband] when considering her history of denying visitation."

■ Husband is incorrect in asserting that the trial court found that this factor favored Wife over Husband. Instead, the trial court found that this factor did not favor one parent over the other. The evidence, when viewed in the light most favorable to the trial court's judgment, supports the trial court's finding and does not, as Husband contends, warrant a finding against Wife on this factor. For example, although Wife testified at trial that she, on occasion, had allowed someone besides Husband to watch their children, she also stated her belief that the first person who should care for the children in her absence is Husband. In addition, both parties testified at trial that Wife allowed Husband to spend more time with the children than was required by their temporary custody agreement. Wife also stated that when Husband requested that he take the chil-

dren to school instead of a neighbor when Wife is unable to, she agreed. The trial court's finding that this factor did not favor one parent over the other is supported by substantial evidence, is not against the weight of the evidence, and does not constitute a misapplication of the law or an abuse of discretion.

■ Husband's allegations of error in the custody award raised in his point relied on concern only two of the eight factors listed in section 452.375.2 that the court considered in determining the children's best interests, so this court will not review the remaining factors.[4] Husband has failed to demonstrate that the trial court's findings on these two factors are erroneous and that a weighing of all of the applicable the factors listed in section 452.375.2 warrant a different result. Therefore, the trial court did not err in making its custody award. Husband's first point is denied.

## B. No Error in Awarding Wife Maintenance

■ In his second point, Husband asserts that the trial court erred in awarding maintenance to Wife. The trial court can award maintenance only if it finds that the party seeking maintenance: "(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employment[.]" Section 452.335.1. The trial court has broad discretion in determining

---

3. Although in his point relied on Husband lists Wife's alleged denial of his visitation as another example of Wife's abusive behavior, in his argument, he discusses the alleged denial of visitation as a reason why the court's finding on factor (4), which parent is more likely to allow the children frequent, continuing and meaningful contact with the other parent, is erroneous. This court will, gratuitously, discuss it in that context.

4. In the argument section following this point, Husband also challenged the trial court's finding regarding factor (5), "the adjustment of the children to their home, school and community." Husband did not raise this claim of error in his point relied on, however, so this court will not address it. *See* Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.' ").

whether to award maintenance, and this court will not reverse the award absent an abuse of that discretion. *Hatchette v. Hatchette,* 57 S.W.3d 884, 891 (Mo.App. 2001). This court "will interfere with a maintenance award only when it is patently unwarranted or is wholly beyond the means of the spouse who pays maintenance." *Id.* "The burden is on the party contesting maintenance to prove that the maintenance award shocks the appellate court's sense of justice." *Id.* In reviewing the challenge to maintenance, this court must "view the evidence in the light most favorable to the judgment and disregard all evidence and inferences to the contrary." *Bolch v. Bolch,* 78 S.W.3d 769, 771 (Mo.App.2002).

In this case, the trial court found that Wife is unable to support herself through appropriate employment and that she lacks sufficient property to meet her reasonable needs. The trial court awarded Wife $1,000 per month as maintenance for sixty months and made the order modifiable. Husband argues that the trial court's finding that Wife is unable to support herself through appropriate employment is not supported by substantial evidence, is against the weight of the evidence, and constitutes a misapplication of the law and an abuse of discretion because substantial evidence established that Wife "refuses" to support herself and work full time.

When viewed in the light most favorable to the trial court's judgment, however, the evidence contradicts Husband's allegation that Wife "refuses" to become self supporting. The record indicates that Wife has made a good faith effort to support herself by applying for full-time work at various places, such as department stores and telephone companies. In addition, Wife testified that although the job she currently has is only part time, she has informed her employer that she would be willing to work full time if a full-time position becomes available.

Moreover, there was sufficient evidence to establish that even if Wife did work full time, she would be unable to support herself. At the time of the dissolution proceeding, Wife was forty-one years old and a high school graduate with a few college credits. During the marriage, Wife was principally the homemaker and relied on Husband for support. While Wife occasionally worked outside the home during the marriage, she mostly worked part-time, minimum wage jobs. Additionally, Wife testified that she does not possess any particular job skills or training. Thus, as the evidence indicates that Wife has little work experience, no particular job skills or training, and spent the main part of the parties' twelve year marriage as a homemaker, the trial court's finding that Wife could not support herself through appropriate employment is supported by sufficient evidence. Furthermore, as Husband failed to demonstrate how Wife is qualified for higher paying jobs that would allow her to support herself, the trial court's finding that Wife is unable to support herself is also not against the weight of the evidence. Thus, Husband has not proven that the maintenance award is "patently unwarranted." *Hatchette,* 57 S.W.3d at 891.

The trial court's decision to award maintenance to Wife is supported by substantial evidence, is not against the weight of the evidence, and does not constitute a misapplication of the law or an abuse of discretion. Husband's second point is denied.

### C. No Error in Awarding Attorney's Fees

In his third point, Husband asserts that the trial court erred in awarding

Wife attorney's fees to "punish" Husband. The trial court, "after considering all relevant factors, including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action," may award attorney's fees to a party in a dissolution action. Section 452.355.1. When reviewing an award of attorney's fees, this court must afford the trial court considerable discretion. *Morse v. Morse*, 80 S.W.3d 898, 907 (Mo.App.2002). "An award of attorney's fees will be reversed only upon a showing of an abuse of discretion." *Id.* "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 399 (Mo. banc 2001).

In considering Wife's request for attorney's fees, the trial court found that certain positions Husband took during the trial were without merit and unnecessarily increased Wife's attorney's fees. These positions included, "inter alia," Husband's "request for maintenance," his "assertion that [Wife] was '99%' at fault for the breakup of the marriage," his "cancellation of [Wife's] health insurance," and his "refusal to refinance the marital home thereby risking foreclosure." Thus, the trial court ordered Husband to pay $3,000 of Wife's attorney's fees.

Husband argues that the trial court's findings supporting the attorney's fees award are not supported by substantial evidence, are against the weight of the evidence, and constitute a misapplication of the law and an abuse of discretion. Specifically, he argues that Wife failed to prove that his conduct, which the court cited as the bases for its attorney's fees award, caused her to incur "extra legal fees." He contends that the summary of

attorney's fees Wife offered into evidence was insufficient to show that his conduct increased Wife's fees, as the summary was not itemized and did not show that the charges were reasonable and necessary.

■ Contrary to Husband's claim, however, the record shows that the day after Wife offered the summary of her attorney's fees, she offered a detailed statement of her fees because of Husband's objection to the summary as being non-itemized. Even if Wife had not provided a detailed billing statement, however, the trial court is " 'considered to be an expert in the necessity, reasonableness and value of fees.' " *Crews v. Crews*, 949 S.W.2d 659, 671–72 (Mo.App.1997) (quoting *Leone v. Leone*, 917 S.W.2d 608, 616 (Mo. App.1996)). As an expert on the issue of attorney's fees, the trial court can set the amount of an attorney's fees award " ' "without the aid of evidence." ' " *Nelson v. Hotchkiss*, 601 S.W.2d 14, 21 (Mo. banc 1980) (citations omitted).

■ In this case, the trial court was well within its discretion in ordering Husband to pay a portion of Wife's attorney's fees. The record supports the trial court's determination that certain positions taken by Husband at trial were without merit and unnecessarily increased Wife's attorney's fees. Despite the fact that, even with full-time income imputed to Wife, Husband earned over $6700 per month more than Wife, Husband requested maintenance. Husband testified at trial that he "certainly" does not need maintenance at the present time, but he was asking for it anyway because Wife had asked for maintenance and he may at some "future date" become disabled and need maintenance. Husband also removed Wife from his group health insurance plan without telling Wife, and testified that he assumed Wife would find out about her discontinued insurance coverage the next time she went

to a doctor. Additionally, although the court ordered Husband on October 4, 1999, to pay the mortgage on the marital residence where Wife and the children were residing, Husband refused to refinance the home when their balloon note came due, causing the bank to initiate foreclosure proceedings. Based on Husband's conduct and the disparity in the parties' financial resources, the trial court, as an expert in attorney's fees, did not abuse its discretion in ordering Husband to pay $3,000 of Wife's $14,007 attorney's fees.

Husband also argues that the trial court erred in awarding attorney's fees to Wife because Wife "caused" the guardian ad litem's fees "by making false claims of sexual abuse." Husband does not provide any authority to support his argument that it is error for the trial court to award a party attorney's fees when there is alleged misconduct by that party. *See In re Marriage of Spears*, 995 S.W.2d 500, 503 (Mo. App.1999) (stating that "[i]t is an appellant's obligation to cite appropriate and available precedent if [the appellant] expects to prevail"). Further, while one of Wife's bases for her motion for appointment of a guardian ad litem was her belief that Husband sexually abused the children during the marriage, there were other grounds supporting the appointment as well, such as Husband's allegation that Wife committed domestic violence in the children's presence. Husband does not identify any actual costs of the guardian ad litem related solely to Wife's allegations of sexual abuse. Moreover, it should be not-

ed that in his point relied on, Husband challenges only the award of attorney's fees to Wife, which is a separate issue from the distribution of the guardian ad litem's fees.

The trial court's attorney's fees award to Wife is supported by substantial evidence, is not against the weight of the evidence, and does not constitute a misapplication of the law or an abuse of discretion.[5] Husband's third point is denied.

### D. No Error in Calculating Child Support

■ In his fourth point, Husband argues that the trial court erred in calculating the presumed child support amount under Rule 88.01. To determine child support awards in compliance with section 452.340 and Rule 88.01, trial courts are to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996), which was approved by the Supreme Court in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997). *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 869–70 (Mo. App.2001). In the first step, the trial court "must determine and find for the record" the presumed child support amount under Form 14. *Id.* at 870. In the second step, the trial court, "after considering all relevant factors, must determine whether to rebut the [presumed child support amount] as being unjust or inappropriate." *Id.* As the issue Husband raises concerns whether the trial court properly calculated the presumed child support

5. In the argument portion of this point, Husband raises two additional allegations of error. First, he argues that "[t]he court should tax the guardian ad litem fee against [Wife] because of her numerous unfounded claims of sexual abuse[.]" This argument is different than the one he makes in his point on appeal, which is that the trial court erred in awarding Wife attorney's fees because Wife "caused" the guardian ad litem fees. Second, Husband contends that there were two final judgments in this case, and one "does not list the specific reasons for taxing attorney fees against [Husband]." As neither of these arguments was raised in Husband's point on appeal, this court will not address them. *See* Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.' ").

amount, it involves only the first step of the procedure outlined in *Woolridge. Id.*

In determining the presumed child support amount under the first step, the trial court can either accept one of the Form 14 calculations submitted by the parties, or reject both parties' Form 14 calculations and prepare its own Form 14. *Id.* Here, the trial court rejected both parties' Form 14 calculations and prepared its own. In making its own Form 14, the trial court found that Husband earned a monthly gross income of $7,146.16 plus $450 per month in rental income. The trial court imputed income to Wife "at minimum wage for 40 hours a week, which would provide a monthly income of $893.00[.]" The trial court also imputed $130 per month to Wife for work-related child care expenses. Based on these income findings, the trial court made its Form 14 calculation, and determined that the presumed child support amount was $1,230 per month.

Husband claims that the trial court's calculation of the presumed child support amount was against the weight of the evidence, a misapplication of the law, and an abuse of discretion because it included rental income of Husband in the amount of $450 per month, which was not supported by the evidence, and year-round work-related child care expenses for Wife when she currently works only nine months out of the year.

Regarding the inclusion of Husband's rental income of $450 per month in his gross income, the directions for completing Form 14 provide that in determining a parent's monthly gross income to input on Line 1, "If a parent receives rents ..., 'gross income' is gross receipts minus the ordinary and necessary expenses incurred to produce such receipts. Depreciation, investment tax credits and other noncash reductions of gross receipts may be excluded from such ordinary and necessary expenses." Husband claims that the amount of rental income the court included in his gross income was erroneous because his Exhibit 7, a 1999 Supplemental Income and Loss Statement, Schedule E, Form 1040, showed he received rental income of $223.75 monthly if the court excludes depreciation as an ordinary and necessary expense, and only $14.25 monthly if the court includes depreciation as an ordinary and necessary expense.

Husband's own testimony, however, demonstrated that the income and expense amounts listed in his Exhibit 7 were not accurate as of the time of trial. While Exhibit 7 listed Husband's rental income as $4,025 per year or approximately $335 per month, Husband testified that he receives rental income in the amount of $475 per month. Likewise, while Exhibit 7 listed Husband's expenses as $3,854 per year, Husband testified that he had more extraordinary expenses in 1999 than in other years. Additionally, Exhibit 7 showed that $1,169 of the expenses listed on the form were attributable to depreciation, which the Form 14 directions do not require to be included as part of the ordinary and necessary expenses deducted from income.

Husband further asserts that the trial court erred in calculating the presumed child support amount because it included year-round work-related child care expenses for Wife, even though she currently works only nine months out of the year. The problem with Husband's argument is that the trial court also imputed year-round income to Wife. The directions for completing Form 14 state that in inputting a parent's gross income on Line 1, "[i]f a parent is unemployed or determined to be underemployed, 'gross income' may be based on imputed income." The Caveat to Comment H to Line 1 further provides that if the trial court imputes income to a party, the trial court may also impute "rea-

sonable work-related child care costs" to the party when calculating the presumed child support amount. Therefore, since the trial court imputed a year-round income to Wife, the trial court also was allowed to impute year-round reasonable work-related child care costs to Wife.

The trial court's calculation of the presumed child support amount was not against the weight of the evidence, and did not constitute a misapplication of the law or an abuse of discretion. Husband's fourth point is denied.

## IV. Wife's Appeal

### Error in Limiting Maintenance to Sixty Months

 In her sole point on appeal, Wife claims that the trial court erred in limiting her maintenance award to sixty months. On the issue of limiting maintenance, "[t]here is a judicial preference for awards of maintenance of unlimited duration." *McIntosh v. McIntosh*, 41 S.W.3d 60, 72 (Mo.App.2001). Thus, "[a] decision to limit maintenance is justified only where substantial evidence exists of an impending change in financial condition of the parties." *Allen v. Allen*, 961 S.W.2d 891, 896 (Mo.App.1998). "Maintenance should not be prospectively terminated if no evidence was presented or no reasonable expectation can be made that the circumstances of the parties will be markedly different in the future." *Id.* Wife argues that there is no substantial evidence "to support a reasonable expectation of an impending change in the financial circumstances of the parties that would justify the limitation and prospective termination of maintenance."

 Wife is correct that there is no evidence in the record that indicates that the financial resources of either Husband or Wife are likely to change in the future.

While Wife testified that she is willing to work full time and would eventually like to return to college, "[m]aintenance awards cannot be based on mere speculation as to the future condition of the spouse." *Smith v. Smith*, 840 S.W.2d 276, 277 (Mo.App. 1992). "Such speculation constitutes an abuse of discretion." *Id.* at 278. There was no evidence that Wife was likely to obtain a job in sixty months that would allow her to become self supporting. There was also no evidence that Husband's financial resources were likely to decrease in sixty months. Thus, the trial court abused its discretion in prospectively ending the maintenance award in sixty months, and that portion of the judgment is reversed and remanded.

## V. Conclusion

On Husband's appeal, this court finds that the trial court did not err in (1) making its custody award; (2) awarding Wife maintenance; (3) awarding Wife attorney's fees; and (4) calculating child support. On Wife's appeal, this court finds that the trial court erred in limiting Wife's maintenance to sixty months. Thus, the portion of the judgment limiting Wife's maintenance to sixty months is reversed and remanded. The judgment is affirmed on all other issues.

All concur.