Joseph Lamar CLANCE, Jr., Appellant,

v.

Lourdes Maria CLANCE, Respondent.

No. WD 62273.

Missouri Court of Appeals,
Western District.

March 2, 2004.

Bradley P. Grill, Kansas City, for Appellant.

Richard Loring Becker, Gladstone, for Respondent.

RONALD R. HOLLIGER, Judge.

Joseph Clance appeals from the trial court's Amended Judgment dealing with the division of property and debts, maintenance, attorney fees, and child support in connection with his divorce from Lourdes Clance. Mr. Clance's appeal raises three points of error: (1) certain stock options granted to him after dissolution of the parties' marriage were improperly classified as marital property and divided between the parties as such; (2) he was improperly denied a credit for $30,000 he paid to Mrs. Clance under the terms of the original judgment; and (3) the maintenance award was unwarranted under the circumstances.

We find that the stock options were improperly classified as marital property because the trial court did not have jurisdiction to divide property that did not exist on the date the divorce decree became final. As to the other two points on appeal, we find no error and affirm.

### Facts and Procedural History

Joseph Clance filed for divorce from his former wife, Lourdes Clance, on September 30, 1999. Mr. and Mrs. Clance were married for twenty-two years and have two children together. Mrs. Clance worked outside of the home off and on during the marriage but predominately served as a housewife. Mr. Clance clearly earned the majority of the family's income.

A Judgment and Decree for Dissolution of Marriage was entered on December 12, 2000, which purported to divide all marital and non-marital assets and liabilities pursuant to a property settlement agreement between the parties. No maintenance was awarded. After entry of the original judgment, Mrs. Clance discovered that Mr. Clance had failed to disclose the existence of certain stock options annually granted to him by his employer between 1997 and 2000. She petitioned to have the original judgment set aside, and the trial court vacated the portions of the original judgment dealing with the division of property and debts, maintenance, attorney fees, and child support on February 27, 2002.

The court entered a new judgment on these issues on August 23, 2002. The judgment declared all of the stock options awarded to Mr. Clance as of December 13, 2000, to be marital property and divided them evenly between the parties. The judgment also awarded Mrs. Clance monthly maintenance in the amount of $1,400.

Pursuant to a motion filed by Mrs. Clance, the trial court entered an Amended Judgment on December 20, 2002, that clarified the stock option division in light of a stock split that, unknown to the court, had occurred in June. The Amended Judgment is essentially the same as the August 23rd judgment in all other respects.

Mr. Clance appeals from the Amended Judgment raising three points of error: (1) certain stock options granted to him after dissolution of the parties' marriage were improperly classified as marital property and divided between the parties as such; (2) he was improperly denied a credit for $30,000 he paid to Mrs. Clance under the terms of the original judgment; and (3) the maintenance award was unwarranted under the circumstances.

### Standard of Review

■ The trial court's ruling will be affirmed unless it is unsupported by the evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Warner v. Warner*, 46 S.W.3d 591, 594 (Mo.App.2001) (citing

*Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The evidence and permissible inferences therefrom will be viewed in the light most favorable to the decree without consideration of contrary evidence and inferences. *Sanders v. Sanders*, 933 S.W.2d 898, 899 (Mo.App.1996). " 'The appellant bears the burden of demonstrating error,' and this court defers 'to the trial court's decision, even if the evidence could support a contrary conclusion.' " *Farnsworth v. Farnsworth*, 108 S.W.3d 834, 837 (Mo.App. 2003) (quoting *Taylor v. Taylor*, 25 S.W.3d 634, 638 (Mo.App.2000)).

■ The trial court has broad discretion in deciding how best to divide marital property, *Comninellis v. Comninellis*, 99 S.W.3d 502, 506 (Mo.App.2003) (citation omitted), and in deciding whether or not to award maintenance, *Aurich v. Aurich*, 110 S.W.3d 907, 914–15 (Mo.App.2003) (citation omitted). To the extent issues in this appeal deal with the division of marital property and the award of maintenance, they will be reviewed for an abuse of discretion. *Comninellis*, 99 S.W.3d at 506; *Aurich*, 110 S.W.3d at 914–15. "An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to indicate indifference and a lack of careful judicial consideration." *Comninellis*, 99 S.W.3d at 506.

### Discussion

***Did the trial court err in classifying stock options awarded on December 13, 2000, as marital property?***

Mr. Clance's first point on appeal is that the trial court erred in classifying 2,500 unexercised stock options granted to him on December 13, 2000, as marital property because the judgment dissolving his marriage to Mrs. Clance was entered on December 12, 2000. Mr. Clance does not challenge the marital property classification of stock options awarded prior to this date.

■ Upon dissolution of marriage, the trial court is charged with the task of setting aside non-marital property to each spouse and dividing marital property between the spouses. § 452.330.1. Save certain exceptions, marital property is generally defined as "all property acquired by either spouse subsequent to the marriage[.]" § 452.330.2. Property acquired after the parties' marriage but before a decree of legal separation or dissolution of marriage is presumed to be marital property. § 452.330.3; *Stratman v. Stratman*, 948 S.W.2d 230, 233 (Mo.App.1997) (citation omitted). " 'Conversely, property acquired prior to the marriage or after the entry of decree of legal separation or dissolution is not marital property.' " *Stratman*, 948 S.W.2d at 233–34.

A judgment of dissolution of marriage is final when entered. § 452.360.1. Here, the Judgment Decree for Dissolution of Marriage was filed on December 12, 2000. December 12th, then, is the date on which the presumption of marital property ends according to section 452.330.3.

In classifying the December 13th stock options as marital property, the trial court found that the stock options were "acquired" during the marriage because the labor that led to the stock option award occurred during the marriage. The term "acquired" has been defined in terms of the source of funds rule, which was first adopted by the Missouri Supreme Court in *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 824 (Mo. banc 1984). "Under the source of funds rule, the character of the property is determined by the source of funds financing the purchase. The property is considered to be acquired as it is paid for so that a portion of the property's ultimate value

will be marital property." *Id.* (citation omitted). "Acquired" then, is defined as "an 'on-going process of making payment for acquired property.'" *Id.* at 825.

Mrs. Clance reiterates the trial court's reasoning in her own argument on appeal, i.e., that the stock options were "acquired" during the marriage and are, therefore, marital property. Mr. Clance, on the other hand, makes three arguments as to why the stock options should not have been classified as marital property: (1) the stock options were more in the nature of compensation for future work as opposed to compensation for work already completed; (2) the stock options were unvested and their potential for vesting was contingent upon many things including his continued employment; and (3) the stock options were not in existence during the marriage and were, therefore, not "acquired" during the marriage.

If Mr. Clance is correct that the stock options were meant to compensate him for future work, then they would not qualify as marital property under section 452.330.2 because they would not have been "acquired" prior to the dissolution of the marriage, i.e., the efforts leading to their creation would have occurred after the marriage was dissolved. *See Warner,* 46 S.W.3d at 595–96, 602. The husband in *Warner* raised a similar issue on appeal. *Id.* at 595. He took a job with AOL after the parties separated and filed for divorce but before the divorce decree was entered, and AOL granted him stock options after the first day of the dissolution trial, which lasted three days spread out over a five-month period. *Id.* at 593, 595.

The court found this argument unpersuasive because "the evidence could be viewed as indicating that Husband's expertise in broadcast and cable marketing, developed over the years of the marriage, was being recognized by AOL as a substantial factor in the grant of the options." *Id.* at 602. Because neither party requested findings of fact or conclusions of law, this finding was not clearly stated in the record. *Id.* at 601–02. The court's statement that the stock options were marital property because they were earned by labor that occurred during the marriage is in line with the courts' interpretation and application of the term "acquired" in *Hoffmann. See id.* at 602. Because the stock options were "acquired" after the parties' marriage but before entry of the dissolution decree, they were marital property. *Id.*

Analysis of the stock option plan and Mr. Clance's own testimony shows that his stock options were not awarded to compensate him for future work. The 2000 Stock Plan, under which the stock options in question were awarded, states that certain employees "who are responsible for or contribute to the management, growth and profitability of the business" are eligible to receive the options. This quote indicates that the stock options were awarded to employees for past performance, and Mr. Clance admitted as much on cross-examination. Mr. Clance's first argument is unpersuasive.

His second argument, that the stock options should not be classified as marital property because they were unvested and their potential for vesting was contingent upon many things including his continued employment, is likewise unpersuasive. Mr. Clance's options vest on a graduated scale. Twenty-five percent of the stock options will vest each year so that all of the options awarded to Mr. Clance on December 13, 2000, will be fully vested on December 13, 2004. The fact that the stock options were not exercisable by Mr. Clance on the date they were granted does not, however, prevent them from being classified as marital property.

This precise issue was addressed in *Smith v. Smith*, 682 S.W.2d 834 (Mo.App. 1984). There, the husband received stock options from his employer, only two of which were exercisable or vested at the time of trial. *Id.* at 836–37. The trial court found that all of the options, both vested and unvested, were marital property and divided them between the parties. *Id.* On appeal, the husband argued that the unvested stock options should not be considered marital property because the ability to exercise them was contingent upon his continued employment. *Id.* at 837.

In affirming the trial court's decision and finding that all of the stock options awarded to the husband prior to the date of dissolution were marital property, the court stated that the stock options were fully earned and created by the efforts of both spouses, and their value was fixed, subject only to change by market forces. *Id.* (citing *Kuchta v. Kuchta*, 636 S.W.2d 663, 665 (Mo. banc 1982)). The court found this situation was in contrast to and should be treated differently than pension plans because pensions are earned over the entire time a worker is employed. *Id.*

Mr. Clance's third argument is that the stock options could not have been "acquired" during the marriage because they did not exist until after the marriage was dissolved and, therefore, the stock options were improperly classified as marital property. No Missouri court has apparently addressed this type of factual situation.

Mrs. Clance principally relies on two cases, *Sanders v. Sanders*, 933 S.W.2d 898, and *Stratman v. Stratman*, 948 S.W.2d 230, in arguing that the stock options in question should be considered marital property. In *Sanders*, the wife argued that a stock bonus given to her husband by his employer the February after their October wedding was marital property. 933 S.W.2d at 899–900. The husband introduced evidence, however, that showed the stock bonus was based on his work performance between October 1st and September 30th of a given year. *Id.* at 901.

The court found that the trial court correctly characterized the property as nonmarital. *Id.* at 901–02. In doing so, the court stated that, according to the source of funds rule, the characterization of property as marital or non-marital depends on the source of funds financing the purchase. *Id.* at 901 (citing *Hoffmann*, 676 S.W.2d at 824). Property is acquired as it is paid for and not when title passes. *Id.* (citation omitted). "Labor as well as other assets can contribute to the acquiring of property." *Id.* (citing *Meservey v. Meservey*, 841 S.W.2d 240, 245 (Mo.App.1992)). Because the stock bonus was based on the husband's work performance between October 1st and September 30th, admittedly several weeks before the parties' marriage, the stock bonus was "acquired" prior to the parties' marriage and was non-marital property. *Id.* at 901–02.

In *Stratman*, the husband, a business owner, bought a piece of real estate with funds he collected from clients after the divorce decree became final. 948 S.W.2d at 234. The record indicated, however, that the funds were collected pursuant to accounts receivable for work completed prior to the parties' divorce. *Id.* at 235. Because the source of the funds was work completed during the parties' marriage, the court found that the property purchased with the funds was marital property. *Id.*

Mrs. Clance argues that *Sanders* is the mirror image of this case. Because the factor that prevented the stock options from being classified as marital property in *Sanders* is present here, i.e., the work leading to the stock option award did occur during the marriage here, she argues that the result should be different, and the

stock options should be classified as marital property. One distinguishing factor Mrs. Clance ignores, however, is that in *Sanders*, the husband had an enforceable right to the stock options on the date the dissolution decree was filed. This important distinguishing factor was also present in *Stratman* where the husband had an enforceable right to the money he used to buy the property in question because his clients were contractually obligated to pay him for work he had completed.

■ In contrast, Mr. Clance did not have an enforceable right to the stock options until December 13, 2000, one day after his marriage was dissolved. The 2000 Stock Plan under which the stock options were awarded gives a committee complete power to determine which eligible employees should receive stock options, what type of stock options they should receive, and how many they should receive. This distinguishing factor is determinative of the issue.

■ Section 452.330.3 reads, "All *property acquired* by either spouse subsequent to the marriage and prior to a decree of . . . dissolution of marriage is presumed to be marital property[.]" (emphasis added). No Missouri case has yet answered the question whether an item to which neither party has any enforceable right as of the date of dissolution but which was technically "paid for" during the marriage is marital property. We hold that to be considered "acquired property" under sections 452.330.2 and 452.330.3, at least one party to the divorce must have some enforceable right to the item in question. The stock options awarded to Mr. Clance on December 13, 2000, then, were not marital property subject to division by the trial court.

■ The fact that Mr. Clance did not have an enforceable right to the stock options awarded on December 13th is the determinative fact here because, without either party having an enforceable right to the stock options, the trial court did not have jurisdiction to divide them between the parties. Section 452.330.1 gives the trial court the authority to divide marital property between the parties. Inherent in this authority, however, is the basic principle that "[a] judgment or decree may only affect property belonging to parties to an action." *Comninellis*, 99 S.W.3d at 508 (citations omitted). This principle has been applied where one party to a divorce is closely connected to a corporation, and the corporation technically owns items of property sought to be divided as marital property. *Id.* Though the situation here is different from that in *Comninellis*, the principle that a trial court only has the authority to affect property belonging to the parties is no less applicable.

Mr. Clance cites *Ettinger v. Ettinger*, 637 P.2d 63 (Okla.1981), a case from the Oklahoma Supreme Court, in support of his position that the stock options should not be classified as marital property. There, the trial court awarded the wife "one-half of any and all stock options that defendant (Appellee) shall have with OKC Corporation, his present employer, even though said stock options shall or may accrue in the future." 637 P.2d at 63. On appeal, the Court reversed the trial court's property division on the basis that it did not have jurisdiction to divide property that did not exist at the time of the divorce decree and was, therefore, "not jointly acquired property." *Id.* at 65.

While *Ettinger* is similar to this case, it is not precisely on point. There, the trial court attempted to divide stock options perpetually into the future so that the work performance leading to the future awards would not have occurred during the marriage. *Id.* at 63. Here, all of the

work performance leading to the December 13th award did occur during the marriage. The principle that a trial court does not have jurisdiction to divide property that does not exist at the time the divorce decree is filed still applies with equal force though, even when all of the work leading to the acquisition of the property occurred during the marriage.

The source of funds rule tells us that whether or not a piece of property should be classified as marital or non-marital depends on the source of funds financing the purchase. *Hoffmann*, 676 S.W.2d at 824. On December 12th, the date the divorce became final, however, the stock options had not been "purchased," and they did not constitute "property" because Mr. Clance had absolutely no legal right to them.

■ Property is defined as "an aggregate of rights which are guaranteed and protected by the government." BLACK'S LAW DICTIONARY 1216 (6th ed.1990). We know that Mr. Clance had no right to the stock options as of December 12th, because the 2000 Stock Plan under which they were granted gives Mr. Clance no right to any stock options until they are awarded. The stock options did not become Mr. Clance's property until December 13th, the date the committee actually made the award.

If the stock options here in question were awarded on December 11, 2000, established precedent would no doubt lead us to find they were marital property subject to division under section 452.330.1. *See, e.g., Warner*, 46 S.W.3d at 601–02. The two-day difference may seem harsh, but this case of first impression simply happened to be the most extreme example possible in that *all* of the work performance leading to the stock option award occurred during the marriage, but the award was actually not made until after the divorce became final. It is also important to note that no evidence of any collusion was presented. The record does not indicate that Mr. Clance did anything to postpone the grant of the stock options until after his divorce became final nor does it indicate he even had the ability to do so.

If we were to adopt a rule that allowed an item to which neither party had any enforceable right on the date the divorce decree becomes final to be classified as marital property, courts would be required to re-open an inordinate amount of divorce decrees up to an indefinite amount of time into the future. Stock option awards would not be the only type of award under the potential reach of a different holding in this case either. Any type of discretionary award made in consideration of labor that occurred even partially during the marriage could be affected by such a decision. It is better for judges and divorcing parties to know that only those items to which one or both parties has some enforceable right on the day the divorce decree becomes final can be classified as marital property.

■ An improper classification of property as marital property will not require reversal when the overall property division remains fair. *Farnsworth*, 108 S.W.3d at 839. Here, the reclassification of the 2,500 stock options awarded on December 13, 2000, does not affect the overall property division established by the trial court. Because the stock options were unexercised, they had an indeterminable monetary value. As a result, the trial court simply gave half of the options to Mrs. Clance and the other half to Mr. Clance. Taking the options out of the balance sheet entirely, then, has no effect on the bottom line.

While it is true that section 452.330.1(3) allows the trial court to consider the value of Mr. Clance's non-marital property in deciding how much marital property should be awarded to Mrs. Clance, the reclassification of the 2,500 stock options will have no effect on the marital property division in this case for the same reason they cannot be classified as marital property. The stock options were not awarded until after the divorce decree became final so the trial court had no jurisdiction to consider them for any purpose.

Rule 84.14 grants this court the authority to "give such judgment as the court ought to give." Pursuant to this authority, we set aside and hold void the portion of the judgment classifying the 2,500 stock options awarded to Mr. Clance on December 13, 2000, as marital property because the court did not have jurisdiction over property that did not exist on the date the dissolution became final. *Farnsworth*, 108 S.W.3d at 840–41 (citations omitted). We need not, then, remand this matter to the trial court for any further proceedings on this issue. *Id.* at 841.

***In dividing the parties' property, did the trial court err by not giving Mr. Clance credit for $30,000 he paid to Mrs. Clance under the terms of the original judgment?***

The original judgment entered on December 12, 2000, did not award Mrs. Clance any maintenance but did award her $54,000 to equalize the marital property division. This award was to be paid by Mr. Clance in $1,500 monthly installments. He paid these monthly installments on the first of each month in an amount totaling $30,000.[1] Mrs. Clance testified that her first attorney told her the $54,000 judgment was intended to serve as maintenance. Mr. Clance also testified that the judgment was in lieu of maintenance because he did not want to get into a "maintenance situation." In the Amended Judgment the court acknowledged that Mr. Clance had been making the monthly payments but stated, "Petitioner shall not be entitled to refund or credit regarding the $1,500 monthly payments made to [Mrs. Clance]."

Mr. Clance makes two arguments as to why the trial court erred by not giving him a credit for $30,000 he paid to Mrs. Clance under the terms of the original judgment. First, he argues that the trial court's action effectively awarded Mrs. Clance retroactive maintenance. Second, he argues that the overall property division was not "just" as required by section 452.330.1.

Retroactive maintenance cannot be awarded under section 452.335, which speaks prospectively, not retrospectively. *Colquitt v. Muhammad*, 86 S.W.3d 144, 148 (Mo.App.2002) (citing *Woolsey v. Woolsey*, 904 S.W.2d 95, 98 (Mo.App. 1995)). Here, the trial court did not purport to award retroactive maintenance in the Amended Judgment, but Mr. Clance argues that the trial court *effectively* did so by not giving him a $30,000 credit for money he paid to Mrs. Clance.

Essentially, Mr. Clance's argument focuses on two facts: (1) that the original judgment did not award maintenance, and (2) that the evidence at trial revealed the $54,000 judgment was in lieu of maintenance. He asks us to infer that the trial

---

1. Mr. Clance's first $1,500 payment was due on December 1, 2000, according to the original judgment. The Judgment Vacating Financial Orders was entered on March 7, 2002. The last monthly payment due under the original judgment, then, was on March 1, 2002. Between December 1, 2000, and March 1, 2002, Mr. Clance would have paid Mrs. Clance a total of sixteen, $1,500 payments or $24,000. The remaining $6,000 was, therefore, paid voluntarily by Mr. Clance and was not required by the original judgment.

court characterized the $54,000 as maintenance and not property in concluding that Mr. Clance was not due a $30,000 credit in the Amended Judgment. He then asks us to declare that the trial court's decision not to give him a $30,000 credit was an improper award of retroactive maintenance.

As argued by Mrs. Clance, however, it is clear from the record that the trial court did consider the $30,000 in making its property division. The judgment clearly states that the trial court considered the amount and that Mr. Clance should not receive a credit for it. It is just as plausible to infer that the trial court's 50/50 division of the remaining assets was based on the fact that Mrs. Clance had already received $30,000. The overall property division, then, comes down to a 58/42 split in favor of Mrs. Clance.

 The trial court did not abuse its discretion in dividing the marital property as it did. A marital property division does not have to be equal. *Kolar v. Kolar*, 114 S.W.3d 440, 444 (Mo.App.2003) (quoting *Shepard v. Shepard*, 47 S.W.3d 412, 417 (Mo.App.2001)). It need only be fair and equitable under the circumstances. *Id.* Section 452.330.1(4) allows the trial court to consider the parties' conduct during the marriage in deciding how best to divide the marital property. If Mr. Clance had not failed to disclose valuable marital assets in the form of stock options awarded to him by his employer during the parties' marriage, the original judgment would not have been vacated. Under these circumstances, we cannot find the trial court's marital property division unjust.

The division of marital property is affirmed in all respects, except that the provision attempting to divide the 2,500 stock

options awarded to Mr. Clance by his employer on December 13, 2000, between the two parties as marital property is set aside and held void.

### Did the trial court err in awarding Mrs. Clance maintenance?

In deciding whether to award maintenance, section 452.335.1 requires the trial court to find that the party seeking maintenance: "(1) [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2)[i]s unable to support himself through appropriate employment[.]" Mr. Clance argues that the trial court's maintenance award was against the weight of the evidence because the marital property apportioned to Mrs. Clance and the salary she receives from appropriate employment should allow her to provide for her reasonable needs. He does not, however, challenge the amount of maintenance awarded.

 In determining whether Mrs. Clance has sufficient property to provide for her reasonable needs, only her income-producing property should be considered. *Burnett v. Burnett*, 18 S.W.3d 27, 30 (Mo.App.2000) (citation omitted). The most significant items of property awarded to Mrs. Clance were: (1) fifty percent of Mr. Clance's 1,750 unexercised stock options;[2] (2) fifty percent of Mr. Clance's IRA; and (3) the marital home. The money in the IRA is not readily available and should not be considered. *Ansley v. Ansley*, 15 S.W.3d 28, 33 (Mo.App.2000) (citations omitted).

 While there is some $75,000 in equity in the marital home, a $100,000 mortgage remains on the property. Mr.

2. The trial court's property division actually granted Mrs. Clance 50 percent of Mr. Clance's 4,250 unexercised stock options that existed on December 13, 2000. Of these

4,250 stock options, however, 2,500 were set aside to Mr. Clance under point one of this appeal.

Clance argues that Mrs. Clance should sell the home and reduce her expenses. It is well settled, however, "that a spouse need not deplete his or her portion of marital assets for living expenses before an award of maintenance is justified." *Burnett*, 18 S.W.3d at 31.

The trial court determined Mrs. Clance's reasonable needs to be $3,318 per month. Mr. Clance does not challenge this determination. It is clear that the trial court had sufficient evidence to conclude that Mrs. Clance could not meet her reasonable needs through income-producing property.

■ Even so, we are still required to determine whether Mrs. Clance's reasonable needs could be met through appropriate employment. The evidence at trial revealed that Mrs. Clance was employed in the early years of the marriage as a clerk and later as an airline scanner. When the family moved to North Carolina and then to Kansas City for Mr. Clance's job, Mrs. Clance remained unemployed. For twelve of the parties' twenty-two year marriage, she was a housewife caring for the family's home and two children. Mrs. Clance does have a high-school education, but she only completed one semester of community college. She has not received any other job training.

At the time of trial, Mrs. Clance was employed with Citibank as a collector. Because she speaks Spanish, her salary was slightly above that of a normal collector. Still, the trial court found her net monthly income, taking account of anticipated tax refunds, to be approximately $2,060. Based on her work history and education, the trial court had sufficient evidence to conclude that Mrs. Clance was appropriately employed for her skill level. Because Mrs. Clance does not make enough money to meet her reasonable needs through income-producing property or appropriate employment, the trial court did not abuse its discretion in awarding her maintenance.

## Conclusion

The Amended Judgment is affirmed in all respects except that the provision attempting to divide the 2,500 unexercised stock options awarded to Mr. Clance by his employer on December 13, 2000, between the two parties as marital property is set aside and held void.

EDWIN H. SMITH, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.